IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS FITZMARTIN and : CIVIL ACTION NO. **4:CV-09-00605**
HELEN K. FITZMARTIN, :
: (Magistrate Judge Blewitt)
     Plaintiffs :
:
     v. :
:
ALLSTATE PROPERTY AND :
CASUALTY COMPANY, :
:
     Defendant :

## **MEMORANDUM AND ORDER**

### **I. Procedural Background.**

On December 10, 2007, Plaintiffs Thomas F. and Helen K. Fitzmartin commenced the present action for breach of an insurance contract (Count I) and bad faith (Count II) based on Defendant Allstate Property & Casualty Company's refusal to cover all of the alleged damages a broken pipe caused to Plaintiffs' house. Specifically, the present action stems from damage to Plaintiffs' property located at 17 Woodridge Circle, Wellsboro, Pennsylvania (the "Property"), and Defendant's refusal to pay Plaintiffs' full estimate of damages, averring that it was overvalued. Defendant seeks Partial Summary Judgment on Count II of Plaintiff's Complaint alleging Bad Faith.

This case was removed by Defendant from the Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania on March 19, 2008. (Doc.1). By Order of August 21, 2008, the matter was transferred to the United States District Court for the Middle District of Pennsylvania. (Doc. 13). The case was

electronically transferred to the Middle District on April 3, 2009, and it was assigned the above-captioned civil number. (Doc. 15). The parties consented to the jurisdiction of the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(c), on April 30, 2009. (Doc. 19).

On February 23, 2010, Defendant Allstate moved for partial summary judgment on Count II, bad faith claim, regarding its refusal to pay the full amount of Plaintiffs' estimated damages to the Property. **(Doc. 26).** Defendant timely filed its support Brief with attached exhibits. (Doc. 26). However, Defendant failed to file its required Statement of Material Facts.

On March 16, 2010, Defendant was ordered to file its Statement of Material Facts pursuant to Local Rule 56.1 M.D.Pa., as well as a Certificate of Concurrence/Non-Concurrence, concerning its Doc. 26 Motion for Partial Summary Judgment. (Doc. 29). In this Order, Plaintiffs were also directed to file their opposition brief to Defendant's Partial Summary Judgment Motion and to respond to Defendant's Statement of Material Facts within 10 days after Defendant's filing. (Doc. 29). Defendant filed its Certificate of Non-Concurrence on March 18, 2010 (Doc. 30), as well as its Statement of Facts on March 24, 2010. (Doc. 32). Plaintiffs filed their Brief in Opposition to Defendant's Partial Summary Judgment Motion, with attached exhibits, on April 1, 2010 (Doc. 34), as well as their Answer to Defendant's Statement of Facts. (Docs. 34 and 35). On April 16, 2010, Defendant filed its Reply Brief with attached exhibits and its Response to Plaintiff's Counter Statement of Material Facts. (Docs. 36 & 38).

As the pleadings in the matter are now closed, and the deadline for discovery has passed, the present Motion for Partial Summary Judgment on Count II of Plaintiff's Complaint alleging Bad Faith is ripe for disposition.

## II. Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law. *Anderson*, 477 U.S. at 248. "Facts that could alter the outcome are material facts." *Charlton v. Aramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's

allegations as true and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d Cir.)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination.").

### III. Allegations of Complaint.

In their Complaint, Plaintiffs allege that Defendant has refused to fully pay their claim under their Allstate insurance policy, and that Defendant has paid only a fraction of their damages. As stated above, Plaintiffs raise two claims, namely, (I) breach of contract and (II) bad faith. Plaintiffs aver that as a result of Defendant's failure and refusal to pay their contractor's estimation of damages, as well as Defendant's mishandling of their claim, they have suffered damages. As relief, Plaintiffs seek damages, including delay and punitive damages, counsel fees and costs, together with interest on their claim. (Doc. 15, pp. 4 and 6).[1]

### IV. Factual Background.

Since Defendant has submitted its Statement of Material Facts (Doc. 32), and since Plaintiffs have responded to it (Doc. 35), we consider the facts stated by both parties which are properly supported by citation to evidence in the light most favorable to Plaintiffs, the nonmoving parties.

Plaintiffs were issued a homeowners insurance policy by Defendant, and there is no dispute that the insurance policy which Plaintiffs purchased from Defendant entitled Plaintiffs to certain basic loss benefits. Plaintiffs aver that the policy is a replacement cost policy, citing the following:

> Building Structure Reimbursement will not exceed the smallest of the following amounts: 1) *the replacement cost of the part(s) of the building structure(s)* for equivalent construction for similar use on the same premises;

---

[1] Since the Court will grant Defendant summary judgment with respect to Plaintiffs' bad faith claim and since Plaintiffs only seek punitive damages with respect to their bad faith claim, Plaintiffs will not be entitled to recover punitive damages in this case.

2) ***the amount actually and necessarily spent to repair or replace*** the damaged building structure(s) with equivalent construction for similar use on the same residence premises;

(Doc. 35, p. 6 *citing* Ex. C, p. 18) (emphasis added).

Defendant denies that the policy was a replacement cost policy, averring that it instead allows for replacement cost if the insured complies with the express terms of the policy. (Doc.38, p. 1).

On or about December 10, 2006, while Plaintiffs were not home, the Property suffered water damage as a result of a pipe that burst in the second story laundry room. (Doc. 27, Ex. A at ¶5).[2] Plaintiffs contacted Alliance Public Adjustment ("Alliance") to represent them in presenting their claim to Defendant Allstate. According to the claim log prepared by Allstate Representative, Joyce Pringle, Defendant contends that Mrs. Fitzmartin reported the claim to Allstate's claims center on December 11, 2006, at 9:30 a.m. (Doc. 27, Ex. B). According to the claim log, Mrs. Fitzmartin reported that there was water damage to the Property as a result of pipes leaking in the second floor laundry room and bathroom. (Doc. 27, Ex. B at p.1).

Upon being notified of the loss, Ms. Pringle contacted Service Master, an emergency water remediation company, to dispatch a team to undertake emergency repairs to the Property. *(Id*.). Service Master performed a tear out and remediation of the affected areas, and

---

[2] Plaintiffs aver that they notified Defendant of the loss on December 11, 2006, which they aver was the day after the loss took place. (Doc. 35, p.6). Defendant admits that the loss was reported on December 11, 2006, but deny that the loss occurred on December 10, 2006, instead averring that the date of the loss is unknown, as no one was residing at the Property at the time of the loss. (Doc. 38, p.1).

Defendant remitted payment to Service Master for their services in an amount of $11, 005.60. (Doc. 27, Ex. C). Specifically, Service Master Team Leader, Robert Boyle, stated in his December 14, 2006 report to Defendant Allstate that Service Master had removed all of the following affected areas of the Property:

> All of the carpeting;
>
> All carpet cushioning [carpet pads];
>
> All ceilings on the first floor;
>
> All outer walls of the kitchen and dining room;
>
> All kitchen cabinets;
>
> All insulation in the property; and
>
> 2 feet of the wall on every wall of the property.

 (Doc. 27, Ex. C at p.2).

Service Master spent an additional four (4) days drying the property. (*Id*.). Plaintiffs aver that the tear out was not "complete," as Defendant claims (Doc. 32, p.2). Plaintiffs contend that there were damaged areas of the Property that were not torn out by Service Master. (Doc.35, p.2).

On December 13, 2006, Defendant assigned the Plaintiffs' claim to Outside Adjustment Administrators, Perry & Perry, to inspect and evaluate the damages to the Property. (Doc. 27, Ex. D). On that same day, Defendant was notified that Plaintiffs had retained Alliance to represent them in the handling of their claim. (Doc. 27, Ex. E).

Defendant avers that during Mr. Perry's initial inspection of the Property, he noted that the only personal property in the home was a table lamp in the second floor bedroom and some curtains. (Doc. 27, Ex. D. at p.2; Doc.32, p.3 *citing* December 18, 2006 Report of Dennis Perry at p.2 attached to Defendant's Motion for Partial Summary Judgment at Ex. E). On December 22, 2006, Mr. Perry returned to the Property to perform a reinspection with Plaintiffs' Public Adjuster, William Mellinger of Alliance Public Adjustment. (Doc. 27, Ex. F). Mr. Perry then prepared an estimate for the damages to the Property. (Doc. 27, Ex. G).

Defendant's Outside Adjustment Administrator, Dennis Perry, prepared an estimate on behalf of Allstate, estimating the value of the damages to be $33,740.07. (Doc. 36, Ex. A). As mentioned, Defendant issued payment to Service Master to perform a tear-out of the affected damaged areas in the amount of $11,005.60 on January 2, 2007. (Doc.36, Ex. C). On January 31, 2007, Plaintiffs were also issued payment for $28,583.98, which was Mr. Perry's estimated value of damages less depreciation. (Doc. 36, Ex. B).

Plaintiffs' general contractor, Michael Wheeland, estimated the damages to the Property to be $147,000.00, and then sent the estimate to Defendant. (Doc. 34, p.6). Defendant contends that on December 17, 2006, seven (7) days after the purported loss, William Westlake, a local contractor, had performed an inspection and evaluation of the damages for Plaintiffs, estimating the total to be $73,115.00. (Doc. 36, Ex. F). Defendant contends that Plaintiff's Public Adjuster, William Mellinger, received this estimate, but claims that it was never provided with the new estimate. (Doc. 36, p.2). Defendant points out that the difference between Mr. Westlake's estimate and Mr. Perry's estimate was only $5,375.55. (Doc. 36, p.3).

On or about May 7, 2007, Allstate Senior Claims Adjuster, Larry Hufford, prepared a supplemental estimate of the damages to the Property, valuing the additional damages to be $22,993.78, which Defendant issued payment for that same day. (Doc. 36, Ex. E). To date, Defendant has Plaintiffs paid $67,739.45 for damages to the Property.[3]

On January 18, 2007, Mr. Perry contacted Mr. Mellinger to discuss the estimate of repairs that he prepared. (Doc. 27, Ex. H). During that conversation, Mr. Perry and Mr. Mellinger disagreed as to the value of the estimated repairs. (Doc, 27, Ex I). Plaintiffs maintain that a contents inventory was submitted and attached to their Complaint, and was paid by Allstate. (Doc.35, p. 2, *citing* Ex. A and Ex. L to Defendant's Motion for Partial Summary Judgment). Plaintiffs contend that Mr. Perry's Report was not a true and accurate depiction of their damages, and that Mr. Perry undervalued the damages to the Property, which Plaintiffs aver was later conceded by Defendant. (Doc. 35, p.3).

Defendant states that on January 18, 2007, Mr. Perry contacted William Berg regarding Mr. Berg's observations when he first arrived at the Property, and his opinion with regards to the cause of the loss, since Mr. Berg was the plumber and the first individual to enter the Property after the loss. (Doc. 27, Ex. J). Defendant further states that Mr. Perry also contacted the Service Master Team Leader, Bob Boyle, for his explanation concerning his (Boyle's) observations of the damages to the Property. (Doc. 32, p.4, Ex. J at p.4).

---

[3]As stated, in total, Defendant paid Plaintiffs $51, 576.76 to repair the structure of their Property and $6,878.00 for damage to its contents. Additionally, Defendant issued payments to Service Master in the amount of $11,005.60 for the tear out and remediation of the damages. (Doc. 38, p.3).

Defendant also states that, according to the January 18, 2007 letter, Mr. Boyle explained to Mr. Perry that Plaintiffs' Public Adjuster, Mr. Mellinger, had contacted him on numerous occasions in an attempt to compel Mr. Boyle to increase his estimate. (Doc.32, p.4, Ex. J at p.4). Plaintiffs deny that Mr. Mellinger ever contacted Mr. Boyle in an attempt to compel Mr. Boyle to increase his estimate, and deny that Service Master prepared an estimate of repairs. As such, Plaintiffs contend that there was nothing to increase. (Doc. 35, p.4). Plaintiffs state that Defendant did not attach a statement, affidavit, or deposition of Mr. Boyle to support its contention that Mellinger contacted Boyle to increase his estimate. Plaintiffs assert that Defendant's contention is impermissible hearsay. (Doc. 35, p.4).

Additionally, Defendant states that Mr. Boyle informed Mr. Perry that he had a carpet evaluation performed by ITEL to establish the replacement cost value of the carpet. (Doc. 32, p.4, Ex. J at p.4). Plaintiffs contend that Mr. Perry significantly undervalued the cost and scope of the repairs necessary to put them back to their position prior to the loss, which Plaintiffs argue was admitted by Defendant through its supplemental payment in excess of $22,000.00. (Doc. 35, p.4).

Defendant states that Michael Wheeland's estimate, which was submitted to it by Plaintiffs' Public Adjuster, William Mellinger, did not contain prices and measurements for the repairs to the Property. (Doc. 32, p.3 *citing* Ex. H). Plaintiffs deny this, and state that a copy of the Wheeland estimate with dollar amounts was attached to their response to Defendant's SMF. (Doc. 35, p.3 *citing* Ex. A).

Upon completing the estimate for the repairs to the Property, Defendant states that Mr.

Perry sent a copy of his estimate to Plaintiffs and their Public Adjuster (Mellinger), and that Mr. Perry contacted Plaintiffs to explain his investigation of the loss, as well as the necessity for the information requested in the reservation of rights letter. (Doc. 32, p.3 *citing* Ex. H). Plaintiffs contend that there was no basis to send a reservation of rights letter. (Doc. 35, p.4).

In addition, Defendant states that Mr. Perry forwarded correspondence to Plaintiffs and their Public Adjuster (Mellinger) explaining the basis of his estimate, and offering assistance for obtaining a local contractor who could complete the repairs to the Property. (Doc. 32, Ex. H.). Plaintiffs deny this, and state that Defendant never identified a contractor who could restore the Property to its pre-loss condition for the amount of the Perry estimate, and that the only evidence on record is that Michael Wheeland, Plaintiffs' contractor, indicated that the work would cost more than $147,000.00 and that he could not start until he received the down payment. (Doc. 35, pp.5 and 8).

In addition, Defendant states that it issued payment to Plaintiffs for the damages to their personal property. (Doc.27, Ex. L). Plaintiffs contend that this statement is in direct contradiction with Defendant's prior contentions that there was no personal property at the site, and that the payment for the contents loss was consistent with the claim that was submitted by Mr. Mellinger, which was attached to their Complaint. (Doc. 35, p.5, *citing* Ex. A).

Defendant states that it provided proper coverage for Plaintiffs' claim for the damages which were the result of the loss that occurred on December 10, 2006. (Doc. 32, p.4, Ex. K & Ex. L). Plaintiffs admit that Defendant accepted Plaintiffs' claim as covered loss under their policy, but specifically deny that Defendant provided proper coverage for their claim for

damages as a result of the loss that occurred on December 10, 2006. Plaintiffs state that a dispute exists as to the extent of damages to the Property. (Doc. 35, p.5). Plaintiffs state that Defendant knowingly grossly underpaid their claim and only provided coverage for a small fraction of their actual loss. (Doc.35, p.5).

Finally, Defendant states that the evidence of record demonstrates that Plaintiffs neither attempted to repair the Property, nor attempted to contact Mr. Perry or Allstate for assistance in obtaining a contractor. (Doc. 32, p.5). Plaintiffs admit this, and further clarify that the contractor selected by Plaintiffs (Mr. Wheeland) required a down payment of $75,000, which was more than Defendant paid for their entire claim. (Doc. 35, p.5).

Defendant correctly notes that Plaintiffs' Counterstatement of Facts (Doc.35), numbers 31, 35, 42, 44, 45, 46, 47, 50, 51, 52, 53, 54, 55, 56, 57, 58, and 59, fail to conform to Pennsylvania Middle District Local Rule 56.1, which requires that the statements of material fact by both parties must include a reference to the part of the record that supports each statement. *See* LR 56.1, M.D. Pa.[4]

**V. Discussion.**

    *A. Subject Matter Jurisdiction*

Prior to addressing the merits of Defendant's Motion, the Court will address whether federal jurisdictional requirements have been met. The Court in *James v. Electronic Data Systems Corp.*, 1998 WL 404817 * 2 (E.D. Pa.), stated:

---

[4]Plaintiffs' counsel is advised to fully comply with the Rules of the Court in the future.

In order to remove a case from state court to the district court, federal jurisdictional requirements must be met. *Medlin v. Boeing Vertol Co.,*, 620 F.2d 957, 960 (3d Cir. 1980). It is the responsibility of the district court to inquire, *sua sponte*, into the question of subject matter jurisdiction. *Id.* The district court has removal jurisdiction where there is diversity of citizenship among the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of costs and interests. [FN5] 28 U.S.C. §§ 1332 and 1441 (1994).

> FN5. 28 U.S.C. § 1332(a) provides in pertinent part: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - - (1) citizens of different states . . . ."

The Court in *The Bachman Co. v. MacDonald*, 173 F. Supp. 2d 318, 322 (E. D. Pa. 2001), stated the removal standard as follows:

> In general, a party is able to remove a civil action filed in state court to federal court if the federal court would have had original jurisdiction to hear the matter. *Lumbermans Mut. Cas. Co. v. Fishman*, No. 99-0929, 1999 WL 744016, at *1 (E.D. Pa. Sept. 22, 1999) (citing 28 U.S.C. § 1441(b) (1999); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991)). Once the case has been removed, however, "the federal court may remand if there has been a procedural defect in removal." *Kimmel v. DeGasperi*, No. 00-143, 2000 WL 420639, at * 1 (E.D. Pa. Apr. 7, 2000) (citing 28 U.S.C. § 1447(c) (West 1994)). Remand is mandatory if the court determines that it lacks federal subject matter jurisdiction. *Id.* (citing 28 U.S.C. § 1447(c) (West 1994)). "When a case is removed from state court, the removing party bears the burden of proving the existence of federal subject matter jurisdiction." *Id.* (citing *Boyer*, 913 F.2d at 111).

"Removal statutes are strictly construed by Courts and all doubts are resolved in favor of remand." *Id.* (Citations omitted).

13

Further, as the *James* Court stated:

> Initially, the court must look to whether the state court claim was removable on its face. *Sfirakis v. Allstate Insurance Co.*, No. CIV. A. 91-3092, 1991 WL 147482, at *2 (E.D. Pa. July 24, 1991). Where the jurisdictional amount of damages is challenged, the amount alleged by the plaintiff in her complaint controls rather than the amount alleged in the defendant's notice of removal. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

*James, supra* at *2.

In the present case, diversity of citizenship is not questioned. Plaintiffs' Complaint contains a demand for damages, counsel fees and costs, together with interest on Plaintiffs' claim in excess of $50,000. Based on the detailed facts above, the Court finds that the amount in controversy in this case could exceed $75,000. The difference between Defendant's estimate and Plaintiffs' estimate is $79,704.67, which is a sufficient amount in controversy to confer diversity jurisdiction on the Court in this case. Thus, the Court finds that it has subject matter jurisdiction in this case.

*B. Bad Faith Claim*

As stated above, Defendant filed a Motion for Partial Summary Judgment only regarding Count II of Plaintiffs' Complaint, which seeks damages for bad faith pursuant to 42 Pa.C.S.A. § 8371.

Defendant argues that there is no evidence in the record to establish that it acted in bad faith when it did not agree to pay the extent of damages estimated by Plaintiffs' contractor, but instead paid Plaintiffs based on its own estimate. (Doc. 27, p. 8). Plaintiffs argue that genuine issues of material fact exist as to their bad faith claim because Defendant Allstate: (1) omitted

several key facts and distorted others; and (2) claim that the damages to the Property are far in excess of the amount that their contractor estimated. (Doc. 34-3, p. 9).

As discussed below, the Court finds that there is insufficient evidence in the record to create any issues of fact that Defendant acted in bad faith, and will therefore grant summary judgment in Defendant's favor as to Count II.

In the case of *Krisa v. Equitable Life*, 113 F. Supp. 2d 694, 702-703 (M.D. Pa. 2000), the Court discussed a bad faith claim under Pennsylvania law.[5]   The *Krisa* Court stated as follows:

> The standard for assessing insurer bad faith under §§ 8371 was recently restated in *Keefe v. Prudential Property and Casualty Ins. Co.,* 203 F.3d 218, 225 (3d Cir.2000): [T]he term bad faith includes 'any frivolous or unfounded refusal to pay proceeds of a policy.' 'For purposes of an action against an insurer for failure to pay a claim, such conduct imparts a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self interest or ill will; mere negligence or bad judgment is not bad faith.' Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy;  and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim. These two elements--absence of a reasonable basis for denying a claim under the policy and knowledge or reckless disregard of the lack of such reasonable basis-- must be proven by clear and convincing evidence. *Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir.1997). Because "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case,"*Anderson,* 477 U.S. at 254-55, 106 S.Ct. 2505, a proponent of a bad faith claim "must present sufficient evidence such that, if believed, a jury could find bad faith under the clear and convincing standard." *Greco v. The Paul Revere Life Ins. Co.,* No. Civ.A. 97-6317, 1999 WL 95717, *3, (E.D.Pa., Feb.12, 1999).

*Id.*

---

[5]Since this is a diversity case, the Court shall apply Pennsylvania law.  *See The Northwestern Mutual Life Ins. Co. v. Babayan*, Appeal No. 04-3521 (3d Cir. 11-30-05), slip op. p. 14, 2005 WL 3183857.

In Pennsylvania, the good faith standard requires the insurance company to evaluate the case in an "honest, intelligent and objective" manner. *U.S. Fire Ins. Co. v. Royal Ins. Co.*, 759 F. 2d 306, 311 (3d Cir. 1985) (citation omitted). In *Krisa*, 113 F. Supp. 2d at 704, the Court noted that "the case law uniformly assesses bad faith in the context of the terms of the insurance policies and the nature of the investigation undertaken by the insurance company. Thus, even where a court has concluded that an insurance company was obligated under its contract to pay benefits, summary judgment has been entered in favor of the insured on a bad faith claim. *See, e.g., Kearns v. Minnesota Mutual Life Ins. Co.*, 75 F.Supp.2d 413, 421 (E.D. Pa. 1999); *Lieberson v. Chubb Life Ins. Co.*, No. Civ.A. 97-5716, 1998 WL 404537, *2 (E.D. Pa., July 14, 1998)."

The *Krisa* Court quoted *Cantor v. Equitable Life Assurance Soc'y*, 1999 WL 219786, *3 (E.D. Pa. 1999), which stated as follows:

> for an insurance company to show that it had a reasonable basis, **an insurance company is not required to demonstrate its investigation yielded the correct conclusion or even that its conclusion more likely than not was accurate. The insurance company also is not required to show the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion. Rather an insurance company simply must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action.**

*Id.* (Emphasis added).

In *NIA Learning Center, Inc. v. Empire Fire and Marine Ins. Companies*, 2009 WL 3245424, * 11 (E.D.Pa.), the Court stated:

> Federal courts in Pennsylvania generally recognize that a contractual bad faith claim and a statutory bad faith claim are entirely separate causes of action. See *DeWalt v. Ohio Cas. Ins. Co.*, 513 F.Supp.2d 287, 291 (E.D.Pa.2007) ("Bad faith by an insurance company can give rise to two

16

separate causes of action under Pennsylvania law: a breach of contract action for violation of an insurance contract's implied duty of good faith and a statutory action under the terms of Pennsylvania's bad faith law, 42 Pa.C.S. § 8371."); *Schubert v. Am. Indep. Ins. Co.*, 2003 WL 21466915, at *4 (E.D.Pa.2003) ("[T]here is a consensus among both federal and state Courts that § 8371 creates an independent cause of action.").

The Court in *Collins v. Allstate Ins. Co.*, 2010 WL 2510376 (E.D. Pa.), recently decided a

similar case to the instant case, and found that Courts have defined Pennsylvania's bad faith

statute, 42 Pa. C. S.A. § 8371, as "any frivolous or unfounded refusal to pay the proceeds of a

policy." *See Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688

(Pa.Super.Ct.1994) (quoting Black's Law Dictionary 139 (6th ed.1990). The *Collins* Court stated:

> To succeed on a claim of bad faith, a plaintiff must present "clear and convincing evidence that 'the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim.' " *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa.Super.Ct.1999) (quoting *MGA Ins. Co. v. Bakos*, 699 A.2d 751, 754 (Pa.Super.Ct.1997)) (emphasis added). It is a two-pronged test. Where a reasonable basis to deny the claim exists, the insurer will not be held to have acted in bad faith. *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 307-308 (3d Cir.1995) (Pennsylvania law). An insurer will be held to have acted in bad faith, however, if it fails to " 'accord the interest of its insured the same faithful consideration it gives its own interest.'" *Polsselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 752 (1994) (quoting *Cowden v. Aetna Casualty and Surety Co.*, 389 Pa. 459, 134 A.2d 223, 228 (Pa. 1957))

2010 WL 2510376, * 6.

Further, the Court in *DeWalt v. Ohio Cas. Ins. Co.*, 513 F.Supp. 2d 287, 296-297 (E.D.

Pa. 2007), stated:

> Under *Cowden*, an insurer "must accord its insured the same faithful consideration it gives its own interest." *Id.*, 134 A.2d at 228...Cowden is unclear whether negligence on the part of an insurer is enough to create a

bad faith claim, or whether a higher showing of recklessness or intentionality is required. There are several suggestions in the opinion that negligence can constitute bad faith...In addition, in its review of other jurisdictions' decisions on bad faith, the *Cowden* court noted that "almost all the authorities are agreed that an insured may recover from his insurer, regardless of policy limitations, on the ground of negligence, bad faith or fraud in the insurer's conduct in respect of its responsibility." *Id*. at 237. Elsewhere in the opinion, however, the *Cowden* court appears to say that "bad faith" requires something more than mere negligence, stating that "bad faith and bad faith alone was the requisite to render the defendant liable" and that "bad judgment, if alleged, would not have been actionable." *Id*. at 229 (emphasis in original).

Given the distinction *Cowden* makes between actionable "bad faith" and mere "bad judgment," *Cowden* appears to be requiring something more than negligence for a finding of bad faith. Subsequent Pennsylvania Supreme Court decisions, however, have stated in dicta that negligence or unreasonableness in investigating a claim or refusing an offer of settlement can constitute bad faith. See *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 188 A.2d 320, 322 (1963) (An insurer undertaking the defense of an insured must act "with due care in representing the interests of the insured" and if it "is derelict in this duty, as where it negligently investigates the claim or unreasonably refuses an offer of settlement, it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured."); *Gray*, 223 A.2d at 9-10 (same).

The United States Court of Appeals for the Third Circuit has also described the bad faith standard under *Cowden* as negligence: "Pennsylvania law makes clear that an insurer may be liable [for bad faith] ... if it unreasonably refuses an offer of settlement." *Haugh*, 322 F.3d at 237 (internal quotations and citations omitted); see also *Schubert*, 2003 WL 21466915 at *4 (denying summary judgment on a bad faith contract claim where the evidence permitted a jury to find that the insurance company had acted unreasonably in declining a settlement offer); *Clark v. Interstate National Corp.*, 486 F.Supp. 145, 146-49 (E.D.Pa.1980) (finding no error in a jury charge permitting the imposition of bad faith liability if the jury found negligence), aff'd without op., 636 F.2d 1207 (3d Cir.1980). Given the *Haugh* decision, the Court concludes that the controlling interpretation of *Cowden* in this circuit is that a contract claim for bad faith requires evidence that an insurer acted negligently or unreasonably in handling the potential settlement of claims against its insured.

In this case, it is undisputed that the Allstate insurance policy covered Plaintiffs' basic loss benefits, but the parties disagree as to the extent of Plaintiffs' loss which was covered under the policy. As stated, the estimates that each party relies upon differ by $79,704.67. Based on the evidence, the Court finds that Defendant is entitled to summary judgement with respect to Plaintiffs' bad faith claim (Count II).

The main inquiry for bad faith liability is whether there exists a "reasonable basis for denying benefits under the policy." *Keefe v. Prudential Property & Cas. Ins. Co.*, 203 F.3d. 218, 225 (3d Cir. 2000). Thus, the bad faith issue presented in this case is whether the Defendant had a reasonable basis for capping Plaintiffs' loss benefits at $ 67,739.45. As such, Plaintiffs must produce sufficient evidence on which a jury could find, based on the clear and convincing standard, that the Defendant acted in bad faith for not paying Plaintiffs $147,444.12, which Plaintiffs maintain is necessary and reasonable to fully cover their loss.

Plaintiffs argue that Defendant's handling of their claim throughout the controversy amounts to bad faith, and that Defendant has breached its duty of good faith and fair dealing by underpaying "the actual cost of the necessary repairs to place the Property back to its pre-loss condition." (Doc. 34-3, p.6).

As discussed, Defendant sent its final payment on the claim to Plaintiffs on May 7, 2007, after having reviewed numerous estimates for the value of repairs. (Doc. 36, p.2). Further, the estimates of Plaintiffs' second contractor, Mr. Westlake, and Defendant's amount of coverage already provided were sufficiently similar, *i.e.*, they were only $5, 375.55 apart. (Doc. 36, p.3). Defendant correctly states that "such a minimal difference between the amount of coverage

Allstate provided for the loss and Mr. Westlake's estimate, namely $5, 375.55, demonstrates that Allstate's evaluation of the claim was at least reasonable." (Doc. 36, p.3).

Based on the facts detailed above, the Court finds that Plaintiffs cannot establish a bad faith claim, as the undisputed evidence does not show that Defendant's conduct amounted to bad faith. Plaintiffs have failed to show that Defendant did not have a reasonable basis for denying Plaintiffs' full claim under the policy, and that Defendant knew of or recklessly disregarded its lack of reasonable basis for paying the amount. *See Klinger*, 115 F.3d 230, 233 (3d Cir.1997). Plaintiffs have not presented evidence that demonstrates a genuine issue for trial concerning their bad faith claim. Further, Plaintiffs have not provided evidence that Defendant had a dishonest motive in its dealings with their claim, or that Defendant's conduct was sufficiently egregious to be considered reckless. *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751, (3d Cir 1994). The undisputed facts, detailed above, show that Defendant conducted a thorough investigation regarding Plaintiffs' claim for damages due to their loss caused by the water and that it had a reasonable basis for its action.

Since there are no genuine issues of material fact regarding Defendant's conduct in capping damages for Plaintiffs' claim which constitutes bad faith, Defendant is entitled to summary judgment with respect to Plaintiffs' bad faith claim, Count II. Therefore, the Court will grant Defendant's Motion for Partial Summary Judgment, and will set Plaintiffs' remaining breach of contract claim (Claim I) for trial.

An appropriate Order and Judgment will be issued.


                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated:  September 20, 2010**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS FITZMARTIN and      :      CIVIL ACTION NO. **4:CV-09-00605**
HELEN K. FITZMARTIN,      :
     :      (Magistrate Judge Blewitt)
         Plaintiffs      :
     :
         v.      :
     :
ALLSTATE PROPERTY AND      :
CASUALTY COMPANY,      :
     :
         Defendant      :

## ORDER AND JUDGMENT

**AND NOW,** this **20**th day of **September, 2010**, based on the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Defendant Allstate Property & Casualty Company's Motion for Partial Summary Judgment **(Doc. 26)** concerning Plaintiffs Thomas F. and Helen K. Fitzmartin's bad faith claim (Count II), is **GRANTED.**

**IT IS FURTHER ORDERED** that Judgment is entered in favor of Defendant and against Plaintiffs with respect to Plaintiffs' bad faith claim, Count II.[6]


                 **s/ Thomas M. Blewitt**
                 **THOMAS M. BLEWITT**
                 **United States Magistrate Judge**

**Dated: September 20, 2010**

---

[6]By separate Order, the Court will set a pretrial conference regarding Plaintiffs' remaining breach of contract claim, Count I.

22